**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CATAPULT COMMUNICATIONS CORP.,** | ) | |
| | ) | **Case No. 06 CV 6112** |
| **PLAINTIFF,** | ) | |
| | ) | **Judge Andersen** |
| **v.** | ) | |
| | ) | |
| **LEWIS FOSTER,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

# LEWIS FOSTER'S OPPOSITION TO MOTION TO DISMISS

In opposition to the Motion to Dismiss filed by Third Party Defendant Dr. Richard Karp ("Karp"), Third Party Plaintiff, Lewis Foster ("Foster"), by and through his undersigned counsel, submits the following memorandum.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Catapult sells testing equipment to telecommunications companies. Foster is a salesman and a former Catapult employee. In March, 2003, Foster left Catapult and began working for a competitor, Nethawk Corporation ("Nethawk"). Three years after Foster left Catapult, Catapult instituted this action against Foster and another against Nethawk. Among other things, Catapult alleges that Foster misappropriated trade secrets, breached contracts and violated the federal Computer Fraud Act.

Last summer, Foster learned that Karp, Catapult's CEO and single largest shareholder,[1]

1 According to a recent SEC filing, Karp owns over nearly 26% of the company's stock. The next largest shareholder is his ex-wife who owns 12%. Together, the couple owns 38% of the company's stock. See Catapult's Jan. 8, 2009, SEC form Schedule 14A to Definitive Proxy Statement at 15 (attached as Exhibit A). Foster respectfully requests that the Court take judicial notice of the filing pursuant to *Federal Rule of Evidence* 201 because the facts taken from the documents cannot be reasonably disputed by Karp.

contacted at least one of Foster's clients, Motorola, and falsely stated that Foster accessed Motorola's computer network without authorization while on the client's premises. To support his false allegations, Karp provided Motorola with select portions of a deposition transcript from Catapult's suit against Nethawk. Karp's motivation to disparage Foster stemmed from Catapult's loss of a Motorola contract to Nethawk. In Karp's declaration in support of his motion, he admits as much and states that Catapult became "concern[ed] about the confidentiality of its confidential information in the possession of Motorola" and decided to contact Motorola when it "came to Catapult's attention Foster was part of a recent Nethawk sales effort to submit a bid for a Motorola project in competition with Catapult." (Karp Dec. ¶ 18.)

However, Karp's affidavit fails to point out two important things about the deposition testimony that purportedly supports Karp's false accusations. First, the transcript might be subject to a protective order--or at least was at some point. (Foster Dec. ¶ 4.)[2] Secondly, the deposition occurred in 2006. (Foster Dec. ¶ 3.) Thus, Karp's "concern" and timing is more than a little suspicious in light of the fact that he did not contact Motorola until more than two years after the deposition.

In response to Karp's false accusations, Motorola sent correspondence to Foster's current employer stating that Karp's accusations were a "grave concern" and imposed restrictions on the type of equipment that could be used on its premises. Foster also believes Karp contacted other of Foster's customers, made similar misstatements, in an effort to cause Foster to lose their business.

In other efforts to interfere with Foster's employment and customer relationships, Karp contacted Foster's current employer on multiple occasions, and, among other things, requested that Foster be terminated and that the company should not support or indemnify Foster's efforts to

2 Attached as Exhibit B.

defend himself in this litigation.

Accordingly, Foster obtained leave of Court to file a Counterclaim and Third Party Complaint against Catapult and Karp for tortious interference with his employment and customer relationships.[3] Catapult answered the Third Party Complaint, but Karp moved to dismiss asserting that the Court lacks jurisdiction over the dispute. Karp asserts: 1) that the amount in controversy requirement is insufficient to invoke diversity subject matter jurisdiction, and; 2) the Court has no personal jurisdiction over him because his contacts with the state are exempted under the fiduciary shield doctrine.

However, Karp's Motion should be denied. First, although Foster disagrees that the amount in controversy does not meet the requirements for diversity jurisdiction, the amount at issue is immaterial. The Court has supplemental subject matter jurisdiction under 28 U.S.C. 1367(a) which contains no amount in controversy requirement. Second, Karp is not protected by the fiduciary shield doctrine because his acts in disparaging a former employee to a customer were completely discretionary and were acts taken to further his personal and financial interests as the largest single shareholder in Catapult. Accordingly, Foster respectfully requests that the Court deny Karp's Motion, or, if the Motion is granted permit Foster leave to file an amended pleading.

## ARGUMENT

**Amounts in Controversy are Immaterial Because The Court has Jurisdiction Pursuant to section 1367(a).**

Karp asserts that the Court lacks subject matter jurisdiction over the Third Party Complaint because the amount in controversy is insufficient to invoke diversity jurisdiction. Although Foster strongly disagrees with such a proposition, the amount at issue is immaterial. The underlying claim

3 A copy of the Third Party Complaint is attached as Exhibit C.

presents a federal question, and therefore the Third Party Complaint need not meet amount in controversy requirements.

Relying on 28 U.S.C. 1367(b), Karp asserts that this Court has no subject matter jurisdiction. That section reads,

> (b) In any civil action of which the district courts have original jurisdiction **founded solely on section 1332 of this title**, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(Emphasis added).

However, section 1367(b) is inapplicable because the underlying complaint against Foster is not “solely founded” on diversity jurisdiction. It contains a claim under the Computer Fraud Act and plainly states that “[t]his Court has federal question jurisdiction with respect to the Complaint pursuant to 18 U.S.C. § 1030 and supplemental jurisdiction over the related state law causes of action pursuant to 28 U.S.C. § 1367(a).” (First Amd. Compl. ¶ 4.)[4]

Accordingly, because the original action is based upon a federal question, section 1367(a) of the supplemental jurisdiction statute applies. Section 1367(a) reads

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Thus, a district court has supplemental jurisdiction over state law claims pursuant to section 1367(a) "so long as they `derive from a common nucleus of operative fact' with the original federal claims." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). A loose factual connection is

generally sufficient. *Id.*

This Court has subject matter jurisdiction over the Third Party Complaint because its allegations arise from facts common to those at issue in the underlying matter. The underlying lawsuit stems solely from Karp's belief that Foster and Nethawk engaged in unfair and unlawful competition with Catapult. In fact, the acts described in the Third Party Complaint that Karp falsely accuses Foster of taking occurred during a bidding process between Catapult and Nethawk for Motorola business. Moreover, Karp's Motion to Dismiss itself establishes that the facts at issue in the Third Party Complaint relate to those in the underlying matter. Page 13 of Karp's motion describes "Foster's surreptitious conduct to access Motorola's computer network" while "Foster was part of Nethawk's team submitting a competitive bid to Motorola." Thus, by Karp's own admission, facts relevant to the Third Party Complaint stem from facts at issue in the underlying action against Foster.

Accordingly, because Catapult's First Amended Complaint is based upon federal question jurisdiction, and because it and the Third Party Complaint stem from a common nucleus of operative fact, the Court has supplemental jurisdiction over the third party action pursuant to 28 U.S.C. 1367(a).

**The Fiduciary Shield Doctrine is Inapplicable**

At the outset, it must noted that Karp does not deny that his contacts with the state are sufficient to bring him within the specific personal jurisdiction of the Court. Karp instead insists that the fiduciary shield doctrine exempts him from the court's jurisdictional reach. Thus, if the doctrine does not protect Karp, which, as discussed below, it does not, there is no dispute that personal jurisdiction is over Karp proper.

---

4 A copy of the First Amended Complaint is attached as Exhibit D.

As Karp correctly notes, the fiduciary shield doctrine is an equitable or discretionary doctrine, rather than an absolute entitlement. *Burnhope v. Nat'l Mortgage Equity Corp.*, 208 Ill. App. 3d 426, 439. In evaluating whether it is equitable to apply the doctrine, courts consider whether: 1) the individual's personal interests motivated his actions and; 2) whether the individual's actions were discretionary. *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 2009 WL 57455, *6, (N.D. Ill. Jan. 7, 2009).[5] The extent to which the individual seeking protection under the doctrine is a shareholder or has a direct financial stake in the corporation's health may bear on the court's inquiry. *Id.*

Karp's motion disingenuously asserts that his decision to contact Motorola and disparage Foster was "not a matter of simple discretion." (Mot. at 13.) Karp asks the Court to believe that CEOs of publicly traded companies are dutybound to personally contact individual customers that they would not normally contact, state falsehoods about former employees, and transmit deposition transcripts that purportedly support the disparagement. Such a contention is untenable.

Moreover, what Karp also fails to point out is that the deposition testimony eliciting his concern and purportedly spurring him to contact Motorola occurred in 2006. Yet Karp did not mention it to Motorola until 2008. Thus, the fact that Karp waited over two years to provide the information to Motorola makes any assertion that he had no discretion to do so simply unbelievable. If he was truly under a duty to act on the information, the duty arose when the information became available, not when he thought it might win back business. Karp's delay and motivation for sharing the information with Motorola in and of itself establishes that it was a discretionary act.

Moreover, Karp's assertion that he was not motivated by personal interest because he has a minimal financial stake in Catapult is simply false. Although Karp coyly states he has no

5 A copy of the opinion is attached as Exhibit E.

"controlling interest"[6] in Catapult, according to a recent SEC filing, he is the company's largest shareholder and holds over 26 percent of the company's stock.[7] The next largest shareholder is Karp's ex-wife who owns 12 percent of Catapult's stock—less than half of Karp's stake. Thus, assertions by Karp that he holds little stake in Catapult's financial success is simply misleading.

However, it is not surprising that Karp would downplay his financial interest in the company, because the fact that he holds such a significant financial stake in the company makes the fiduciary shield doctrine unavailable to him. *See C.S.B. Commodities, Inc.*, 2009 WL 57455, *6, citing *Margulis v. Med. Parts Int'l, Inc.*, 1999 WL 183648, at *5 (N.D. Ill. Mar. 25, 1999)(" The fiduciary shield defense is unavailable to high-ranking company officers and shareholders [because they] have a direct financial stake in the company's success and therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit.") Thus, because Karp is unprotected by the fiduciary shield doctrine, he is subject to the personal jurisdiction of this Court and his Motion to Dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Foster respectfully requests that the Court deny Karp's Motion to Dismiss and if the Motion is granted, Foster requests leave to amend his Third Party Complaint.

Dated: February 6, 2009

---

6 (Mot. at 13.)

7 See Catapult Jan. 8, 2009, SEC form Schedule 14A to Definitive Proxy Statement at 15 (attached as Exhibit A).

**Respectfully Submitted,**

**By: /s/ Chad Main**
**Attorneys for Defendant**

Michael I. Leonard
Chad W. Main
Meckler, Bulger Tilson Marick & Pearson LLP
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312)474-7925 (phone)
(312)474-7898 (fax)
M:\11141\pleading\amd mtn leave file counterclm.doc

CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Theodore Becker
MORGAN LEWIS & BOCKIUS
77 W. Wacker Drive
5th Floor
Chicago, IL 60601
(312)324-1000
(312)324-1001 (fax)
tbecker@morganlewis.com

J. Pat Heptig
Heptig Law Group, Ltd.
One Lincoln Center
5400 LBJ Freeway, Suite 1200
Dallas, Texas 75240

/s/ Chad W. Main
MECKLER BULGER TILSON MARICK & PEARSON LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900 - Telephone
(312) 474-7898 – Facsimile