IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATAPULT COMMUNICATIONS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 6112 |
| | ) | |
| LEWIS N. FOSTER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| LEWIS N. FOSTER, | ) | |
| Counterclaimant / | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CATAPULT COMMUNICATIONS CORP., | ) | |
| | ) | |
| Counterdefendant, and | ) | |
| | ) | |
| RICHARD A. KARP, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

  Plaintiff Catapult Communications Corp. ("Catapult"), in its first amended complaint (Dkt. No. 18)("First Amended Complaint by Catapult"), alleges that defendant Lewis N. Foster ("Foster"), a former salesman of Catapult, misappropriated Catapult's trade secrets (*Id*. ¶ 29), breached Catapult's confidentiality agreement with Foster (*Id*. ¶¶ 38, 40), and violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (*Id*. ¶ 45). In Foster's counterclaim and third-party complaint (Dkt. No. 93)("Foster's Counterclaim and Third-Party Complaint"), Foster

alleges tortious interference with contract against the former Chief Executive Officer of Catapult, third-party defendant Richard A. Karp ("Karp") (*Id.* ¶ 24), and tortious interference with business advantage against Catapult and Karp. (*Id.* ¶ 14.)

Now pending before the court is a "Motion by Catapult Communications Corporation and Richard A. Karp for Summary Judgment on Defendant Foster's Counterclaim against Catapult and Third Party Claims against Karp" (Dkt. No. 162)("Catapult and Karp's Motion for Summary Judgment".) For the reasons set forth below, this court grants in part and denies in part Catapult and Karp's Motion for Summary Judgment.

BACKGROUND

Foster was previously employed as a salesperson by Catapult, a telecommunications software and equipment company. In 2003, Foster resigned from Catapult and joined ipNetfusion, a direct competitor to Catapult. ipNetfusion has since been acquired by Nethawk Corporation ("Nethawk") and Foster is still employed at Nethawk in their sales department.

In this lawsuit, Foster has filed a "COUNTERCLAIM AND THIRD-PARTY COMPLAINT" against Catapult and Karp in which Foster has organized his allegations into two sections. (*see* Foster's Counterclaim and Third-Party Complaint at 3.) In the first section of Foster's Counterclaim and Third-Party Complaint, labeled "COUNT I TORTIOUS INTERFERENCE WITH CONTRACT (Karp)", Foster alleges that Karp tortiously interfered with "Foster's relationship and contract with [Nethawk]." (*Id.* ¶ 13.) This court will refer to the allegations in Foster's first section as Foster's third-party claim against Karp alleging tortious interference with contract.

In the second section of Foster's Counterclaim and Third-Party Complaint, labeled "COUNT I [*sic*] TORTIOUS INTERFERENCE WITH BUSINESS ADVANTAGE (Karp and

Catapult)", Foster alleges that Karp and Catapult tortiously interfered with Foster's business relationship with "[his] clients." (*Id*. ¶¶ 19-24.) This court will refer to the allegations in Foster's second section as Foster's counterclaim against Catapult and third-party claim against Karp alleging tortious interference with prospective economic advantage[1].

In Foster's first section, Foster alleges that since leaving Catapult Karp has intentionally and unjustifiably interfered with Foster's employment contract and relationship with Nethawk. According to Foster's allegations, Karp requested that Nethawk terminate Foster's employment and that Nethawk refuse to indemnify Foster for expenses associated with this lawsuit. (Foster's Counterclaim and Third-Party Complaint ¶ 12.) As a result of Karp's actions, Foster claims damages consisting of lost compensation and employment opportunities, including a lost promotion to Vice President of Sales at Nethawk. (*Id*. ¶ 14; Dkt. No. 191 ("Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts") ¶ 44).

In the second section, Foster claims that Catapult and Karp have unjustifiably interfered with Foster's business relationship with clients such as Motorola, Cingular, and Alcatel. (Foster's Counterclaim and Third-Party Complaint ¶¶ 19-24; Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 63, 74, 77-78). For example, Foster alleges that Karp sent a letter to Motorola's general counsel falsely accusing Foster of attempting to access Motorola's network without authorization. (Foster's Counterclaim and Third-Party Complaint ¶ 19.) Additionally, Foster alleges that Catapult and Karp maliciously told Foster's clients that Nethawk was about to terminate Foster's employment. (*Id*. ¶¶ 21, 77.) As a result of these actions, Foster claims damages that "include loss of customers and commissions." (*Id*. ¶ 24.)

---

[1] Technically, Foster labels his claim as "tortious interference with business advantage." However, both parties cite Illinois and Seventh Circuit case law in their pleadings that refer to Foster's general type of claim as "tortious interference with prospective economic advantage." For clarity, this court will use the moniker cited in the case law.

Catapult and Karp, in response to evidence gathered during discovery, filed the pending motion for summary judgment on all the claims in Foster's Counterclaim and Third-Party Complaint. For the reasons stated below, this court grants Catapult and Karp's motion for summary judgment [162] on Foster's third-party claim against Karp for tortious interference with contract. Additionally, this court denies Catapult and Karp's Motion for summary judgment [162] on Foster's counterclaim against Catapult and third-party claim against Karp for tortious interference with prospective economic advantage. However, this court limits Foster's counterclaim and third-party claim for tortious interference with prospective economic advantage to the genuine issues of material fact surrounding Foster's potential sale to Motorola in 2008.

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-movant's favor. *Omega Healthcare Investors, Inc. v. Res-Case, Inc.,* 475 F.3d 853, 857 (7th Cir. 2007). However, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAm., L.L.C*., 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Instead, it only determines whether a genuine issue of material fact exists for trial, or in other words, whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Id*.

ANALYSIS

1. <u>Tortious Interference with Contract</u>.

This court grants Catapult and Karp's motion for summary judgment on Foster's third-party claim against Karp alleging tortious interference with contract. As a preliminary matter, both parties disagree about the legal standard in Illinois for tortious interference of contract. Catapult and Karp cite *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) in support of their argument that a plaintiff alleging tortious interference with contract must show (1) the existence of a valid and enforceable contract, (2) the defendant's awareness of the contract, (3) that the defendant intentionally and unjustifiably induced a breach of contract, (4) a breach of contract, (5) and damages as a result of a breach of contract. (Dkt. No. 164 ("Catapult and Karp's Memorandum In Support of Summary Judgment") at 4.) However, Foster argues that under Illinois law a plaintiff is not required to show an actual breach of contract. (Dkt. No. 190 ("Foster's Memorandum in Opposition to Catapult and Karp's Motion for Summary Judgment") at 8.) According to Foster, a plaintiff can maintain a claim for tortious interference with contract by showing that the defendant's improper conduct made the plaintiff's contract performance more burdensome or expensive. (*Id*.) In support of this

proposition, Foster cites *Scholwin v. Johnson*, 498 N.E.2d 249, 255 (Ill. App. Ct. 1986), which in turn quotes § 766A from the Second Restatement of Torts as follows:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another [the plaintiff] and a third person, by preventing the other [the plaintiff] from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other [the plaintiff] for the pecuniary loss resulting to him."

This court disagrees with Foster's interpretation of the Illinois appellate court's opinion in *Scholwin*. In *Scholwin*, the plaintiff asserted a claim for tortious interference of contract and alleged that defendant's tortious conduct prevented plaintiff's own contract performance with a third party, thereby precluding plaintiff from requiring the third-party's reciprocal contract performance. *Id*. at 255. In the underlying circuit court proceeding in *Scholwin*, the circuit court, following Illinois precedent, dismissed the plaintiff's tortious interference with contract claim because the defendant's alleged conduct did not give rise to a breach of contract claim by the plaintiff against the third party. *Id.*; *see Pfendler v. Anshe Emet Day School*, 401 N.E.2d 1094, 1098 (Ill. App. Ct. 1980) (stating that in a tortious interference of contract claim there must be a "subsequent breach [of contract] by the third person due to defendant's wrongful conduct"). The Illinois appellate court in *Scholwin*, however, ruled that the plaintiff sufficiently alleged a claim for tortious interference with contract and cited § 766A of the Second Restatement of Torts in support of this proposition. *Id.* at 256. Contrary to Foster's argument, *Scholwin* does not adopt the "more expensive or burdensome" approach from § 766A of the Second Restatement of Torts as an alternative to alleging a breach of contract. Quite simply, the expense or burden of plaintiff's contract performance was not an issue before the court. *Id.*; *accord Triple Canopy, Inc. v. Moore*, No. 04 C 3265, 2005 WL 1629768, at *7 (N.D. Ill. July 1, 2005) (Filip, J.); *see also Hidrovia, S.A., v. Great Lakes Dredge & Dock Corp.*, No. 02 C 5408, 2002 WL 31509689, at *4 (N.D. Ill. Nov. 7, 2002) (Plunkett, J.). Furthermore, the Seventh

Circuit has stated that "[a]bsent persuasive indicia that the Illinois Supreme Court would extend the action for intentional interference with contract to cover instances of mere hindrance or increased burden, we will not do so." *George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 n.1 (7th Cir. 1983). Therefore, in accordance with established Illinois Supreme Court and Seventh Circuit precedent, Foster cannot successfully oppose summary judgment on his third-party claim for tortious interference with contract by merely proffering evidence of more burdensome or expensive contract performance. This court will now address Foster's evidence opposing summary judgment.

In opposing summary judgment, Foster argues that Karp, in three separate instances, improperly and unjustifiably interfered with Foster's employment contract with Nethawk. (Foster's Counterclaim and Third-Party Complaint ¶¶ 11-12; Foster's Memo. in Opposition to Catapult and Karp's Motion for Summary Judgment at 7-9.) In the first alleged instance, Foster claims that Karp improperly interfered with Foster's employment contract by requesting that Nethawk terminate Foster's employment. (Foster's Counterclaim and Third-Party Complaint ¶ 12.) However, Foster admits he is still employed by Nethawk (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 15, 49) and does not cite any other evidence showing that Karp's alleged request caused a breach of Foster's employment contract. Rather, Foster argues that Karp's termination request caused Foster's employment contract performance to be "more burdensome or expensive." (Foster's Memo. in Opposition to Catapult and Karp's Motion for Summary Judgment at 8.) However, as previously discussed, Foster cannot maintain his third-party claim for tortious interference with contract under Illinois law based on evidence showing that Karp's actions caused Foster's contract performance to be more burdensome or expensive.

In the second alleged instance of tortious interference with contract, Foster claims that Karp's improper and unjustified actions caused Nethawk to rescind Foster's promotion to Vice President of Sales. (Foster's Memo. in Opposition to Catapult and Karp's Motion for Summary Judgment at 7-9.) However, the depositions cited by Foster in opposing summary judgment do not contain any evidence showing that Foster had a contractual right to the Vice President of Sales position. In each deposition, the deponent states that Foster was promoted to Vice President of Sales and then this promotion was later rescinded. (Dkt. No. 191, Exhibit 7 ("Lewis Foster Dep.") at 387; Dkt. No. 191, Exhibit 8 ("Denis Foster Dep.") at 25, 52-51; Dkt. No. 191, Exhibit 9 ("Ashok Agarwalla Dep.") at 187-194.) However, not one of the deponents, including Foster himself, even mentions a valid and enforceable contract entitling Foster to the position of Vice President of Sales. Furthermore, the record does not contain any evidence that Foster's original employment contract with Nethawk was altered or amended to include the Vice President of Sales position. (*See* Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶ 14). At the summary judgment stage, Foster must proffer evidence of a valid and enforceable contract to maintain his third-party claim for tortious interference with contract. *See Harney*, 526 F.3d at 1104 (stating that the non-moving party may not simply rest on the pleadings).

In the third alleged instance of tortious interference of contract, Foster claims that Karp's improper and unjustified actions caused Nethawk to breach an "agreement" that provided full indemnification to Foster for all legal expenses associated with this lawsuit. (Foster's Counterclaim and Third-Party Complaint ¶ 12; Foster's Memo. in Opposition to Catapult and Karp's Motion for Summary Judgment at 5.) At the onset, this court notes that Foster's pleadings are particularly unclear as to whether Foster even argues or alleges that he had an

enforceable contract with Nethawk for full indemnification. (Foster's Counterclaim and Third-Party Complaint ¶ 12; Foster's Memo. in Opposition to Catapult and Karp's Motion for Summary Judgment at 5, 7-9; Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 43, 51, 55.) It appears from Foster's Memo. in Opposition to Catapult and Karp's Motion for Summary Judgment that Foster cites evidence of an offer (as opposed to a contract) for full indemnification to show that Karp's actions caused Foster's employment contract performance to be more burdensome or expensive. However, as previously discussed, Foster cannot maintain a claim for tortious interference with contract based on the "more burdensome and expensive" approach from § 766A of the Second Restatement of Torts.

Assuming arguendo that Foster alleges a contract for full indemnification between Foster and Nethawk, the two deposition transcripts discussing full indemnification that are cited by Foster in his Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts do not even contain evidence of a valid and enforceable contract with Nethawk for full indemnification. (*See* Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 54, 55.) In the first deposition transcript cited by Foster, the deponent generally refers to any indemnification by Nethawk as "paying [Foster's] legal fees" or "pay [Foster's] legal fees." (*See* Dennis Foster Dep. 57:21, 58:8, 58:18, 58:20, 59:9, 59:17, 59:23-24.) However, the deponent does not specify any particular characteristics of any indemnification that would allow this court to reasonably infer the existence of an alleged contract for full indemnification. (*Id*.) This lack of specificity is particularly problematic because Foster admits to signing multiple written indemnification agreements with Nethawk, none of which offer *full* indemnification, none of which are at issue in this case, and all of which may be the subject of deponent's testimony. (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 52-55.)

In the second deposition cited by Foster, the deponent, who is Foster himself, states that he "saw [Nethawk's CEO] at a sales meeting in Vegas, and that's where he told me I would be given full indemnification." (Lewis Foster Dep. 485:7-9.) Setting aside any hearsay concerns, Foster's testimony does not contain any evidence that would permit this court to reasonably infer the three required elements of contract formation: offer, acceptance, and consideration. *In re Marriage of Tabassum & Younis,* 881 N.E.2d 396, 406 (Ill. App. Ct. 2007). With respect to the offer element of contract formation, the statements by Nethawk's CEO could support a reasonable inference that Nethawk's CEO was willing to offer Foster full indemnification of legal expenses. However, Foster's cited testimony does not contain any direct or circumstantial evidence supporting a reasonable inference that Foster accepted this oral offer for full indemnification. (*See* Lewis Foster Dep. 485-86.) The only evidence of contract acceptance in the cited sections from Foster's deposition is Foster's testimony that he signed a completely unrelated document that is not at issue in this case. (*Id*. at 486:15 – 486:16.) Incidentally, this unrelated document only offered to "pay [Foster] some initial legal fees." (*Id*.) As previously stated, Foster must present evidence of a valid and enforceable contract for full indemnification to create a genuine issue of material fact and successfully oppose summary judgment.

In summary, this court grants Catapult and Karp's motion for summary judgment on Foster's third-party claim against Karp for tortious interference with contract.

2. <u>Tortious Interference with Prospective Economic Advantage</u>

This court denies Catapult and Karp's motion for summary judgment on Foster's counterclaim against Catapult and third-party claim against Karp for tortious interference with prospective economic advantage. However, for the reasons that follow, this counterclaim and third-party claim will be limited to the genuine issues of material facts surrounding Foster's sales

opportunity at Motorola in 2008. To prevail on a claim for tortious interference with prospective economic advantage, Foster must show the following: (1) Foster had a reasonable expectation of entering into a business relationship; (2) Catapult or Karp had knowledge of the expectancy; (3) Catapult or Karp intentionally and unjustifiably interfered with the expectancy; and (4) Foster was damaged as a result of the interference. *Dowd v. Gleason*, 693 N.E.2d 358, 370-71 (Ill. 1998).

As a threshold matter, Catapult and Karp argue that Foster, as an employee of Nethawk, does not have standing to assert a claim for tortious interference with prospective economic advantage for any lost sales opportunities. *See J.F. Shea Co. v. City of Chicago*, 992 F.2d 745, 749 (7th Cir. 1993) ("employees must allege a separately cognizable injury [and] generally do not have standing to assert claims of the corporation because they lack direct injury"). Catapult and Karp argue that Foster is essentially asserting the rights of Nethawk in his tortious interference with prospective economic advantage claim rather than asserting a separate, cognizable injury.

This court does not agree. In *J.F. Shea Co.* and the other cases cited by Catapult and Karp in their "MEMORANDUM IN SUPPORT OF MOTION BY CATAPULT COMMUNICATIONS CORPORATION AND RICHARD A. KARP FOR SUMMARY JUDGMENT ON DEFENDANT FOSTER'S COUNTERCLAIM AGAINST CATAPULT AND THIRD PARTY CLAIMS AGAINST KARP" (Dkt. No. 164. at 12.), the plaintiff in the cited cases did not have standing to bring suit because the plaintiff's claim was based on injuries resulting from actions directed at a corporation and not the plaintiff. 992 F.2d at 749; *Thomas v. National Canada Finance Corp.*, No. 94 C 4136, 1995 WL 54473, at **2-3 (N.D. Ill. Feb. 7, 1995) (Castillo, J.). In contrast, Foster alleges several instances of conduct by Catapult and Karp

that were personally directed at Foster, not Nethawk, and Foster alleges that he suffered an injury as a consequence. (Foster's Counterclaim and Third-Party Complaint ¶¶ 19, 21.) That being stated, this court will only allow Foster to base his claim for tortious interference with prospective economic advantage on actions taken by Catapult and Karp that are personally directed at Foster and result in an "injury separate and distinct from the injury alleged or proven to have been suffered by [Nethawk]." *See J.F. Shea Co.*, 992 F.2d at 749. This court will now address Foster's evidence supporting his counterclaim and third-party claim for tortious interference with prospective economic advantage.

In Foster's Counterclaim and Third-Party Complaint, Foster generally alleges that Catapult and Karp tortiously interfered with Foster's prospective economic advantage with his clients. (Foster Counterclaim and Third-Party Complaint ¶¶ 16-24.) In opposing summary judgment, Foster further clarifies this general allegation by arguing that various depositions show Catapult and Karp tortiously interfered with Foster's prospective sales to Motorola in 2004 and 2008 and Cingular in 2005. (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 72, 74, 78.) This court will discuss each sales opportunity in turn.

This court first addresses Foster's sales opportunity at Motorola in 2004. In opposing summary judgment for tortious interference with prospective economic advantage, Foster relies on his own deposition testimony in which he testifies that a fellow employee was passing confidential ipNetfusion (Nethawk's predecessor in interest) information to Catapult during the time Foster was bidding on a Motorola contract in 2004. (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶ 74; Lewis Foster Dep. 541.) Foster further testifies that he "believe[s] [Catapult] took the information … and used that to their advantage, possibly to formulate a price." (Lewis Foster Dep. 542:17-20.) However, Foster's testimony is not based

on personal knowledge that Catapult unjustifiably interfered with Foster's bid for Motorola's business in 2004 and mere speculation is not sufficient at the summary judgment stage to support his counterclaim and third-party claim for tortious interference with prospective economic advantage. *See Hedberg v. Indiana Telephone Co.*, 47 F.3d 928, 931-32 (7th. Cir. 1995) (stating that mere speculation not rooted in personal knowledge is not competent evidence in opposing summary judgment).

Furthermore, Foster's deposition testimony, the same as that discussed in the preceding paragraph, does not detail any actions by Catapult and Karp that are personally directed at Foster and therefore, result in a separate, cognizable injury. According to Foster's deposition, the information passed to Catapult was ipNetfusion's information and not personal information regarding Foster. (Lewis Foster Dep. 541.) Furthermore, Foster testified that Catapult, in offering a competing bid for the same Motorola business, used this information to formulate a price, "show [Catapult's] strengths versus our weaknesses, and just ultimately undermine … our opportunity to win the business." (*Id*. at 542:20-25.) This testimony does not describe any actions personally directed at Foster that result in a cognizable injury to Foster that is separate and apart from what Nethawk, as successor in interest to ipNetfusion, could assert in a similar claim. Thus, Foster does not have standing to assert a claim for tortious interference with prospective economic advantage based on Foster's sales opportunity at Motorola in 2004.

This court next addresses Foster's sales opportunity at Motorola in 2008. According to Foster's testimony, Motorola, in 2008, did not solicit a bid from Nethawk for certain products despite Nethawk's global contract with Motorola to supply such products to Motorola. (Lewis Foster Dep. 524-25.) Motorola subsequently awarded this sales opportunity to Catapult. (*Id*. at 531.) Additionally, at about that same time, Catapult and Karp admit Karp was communicating

with Motorola's general counsel about Foster. (Dkt. No. 165 ("Stmt. of Undisputed Mat. Facts in support of Motion for Summary Judgment on Foster's Counterclaims") ¶¶ 64-65.) The extent to which these communications interfered with Foster's business relationship, were personally directed at Foster resulting in a separate and cognizable injury to Foster, and were improper and unjustified requires the trier of fact to weigh the credibility of witnesses. Therefore, insofar as Foster supports his counterclaim and third-party claim for tortious interference with prospective economic advantage on his sales opportunity at Motorola in 2008, summary judgment is improper. *See Abdullahi*, 423 F.3d at 773 (stating that a court in ruling on summary judgment must not weigh the credibility of witnesses).

The court next addresses Foster's sales opportunity at Cingular in 2005. In opposing summary judgment, Foster argues in his Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts that "'falsities' [were] communicated to Cingular by Catapult," and these "falsities" required "Cingular to rescind [their] offer to purchase Nethawk equipment." (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶ 78.) Foster claims Catapult, who submitted a competing bid for the same sales opportunity, won the Cingular business partially as a result of these alleged actions. (Lewis Foster Dep. 549-50.) To support this argument, Foster cites deposition testimony from a former Nethawk employee and himself. (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶ 78.) However, the two depositions cited by Foster in support of his argument do not even mention "falsities" or malicious actions taken by Catapult or Karp against Foster. (*see* Lewis Foster Dep. 549-50; Denis Foster Dep. 68-69.) In Illinois, competitive bidding is a privileged business activity and one cannot be held liable for tortious interference with prospective economic advantage without evidence of actions motivated by malice or ill-will. *Soderlund Bros., Inc. v. Carrier Corp.,* 663 N.E.2d 1, 7-8 (Ill.

App. Ct. 1995). Moreover, both deponents merely speculate, without any personal knowledge or detail, that Catapult interfered with Foster's sales opportunities. (*see* Lewis Foster Dep. 549-50 (testifying that his contact at Cingular did not give him any details as to why Cingular did not purchase from Nethawk); Denis Foster Dep. 68-69 (testifying that Cingular did not provide any information as to why Cingular purchased from Catapult as opposed to Nethawk).) As previously stated, mere speculation not rooted in personal knowledge is insufficient at the summary judgment stage to support a claim for tortious interference with prospective economic advantage. *See Hedberg*, 47 F.3d at 931-32.

Finally, this court notes that Foster's Counterclaim and Third-Party Complaint alleges tortious interference with prospective economic advantage based on Catapult falsely informing Foster's clients that "Foster was going to be terminated by his current employer." (Foster's Counterclaim and Third-Party Complaint ¶ 21.) In Foster's responsive pleadings opposing Catapult and Karp's motion for summary judgment, Foster further claims that this communication occurred between Catapult and Alcatel. (Lewis Foster Dep. 509-11.) However, Foster does not cite any evidence that Foster lost a sale to Alcatel or is precluded from bidding on Alcatel contracts as a result of actions taken by Catapult and Karp. (Foster's Resp. to Catapult and Karp's LR 56.1 Stmt. of Material Facts ¶¶ 76-77 (only citing testimony related to communication between Catapult and Alcatel).) In fact, Foster does not even mention Alcatel in "LEWIS FOSTER'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT." (*See* Dkt. No. 190.) Thus, this court will not allow Foster to support his counterclaim and third-party claim for tortious interference with prospective economic advantage on allegations of communications between Catapult and Alcatel without evidence of an expectancy of a business relationship between Foster and Alcatel.

## CONCLUSION

For the aforementioned reasons, Catapult and Karp's motion for summary judgment [162] is granted in part and denied in part. Specifically, this court grants Catapult and Karp's motion for summary judgment [162] on Foster's third-party claim for tortious interference with contract against Karp. This court denies Catapult and Karp's motion for summary judgment [162] on Foster's counterclaim against Catapult and third-party claim against Karp alleging tortious interference with prospective economic advantage. However, this court will limit Foster's counterclaim and third-party claim for tortious interference with prospective economic advantage to the sales opportunity at Motorola in 2008.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 13, 2010